[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15803
Non-Argument Calendar
_____

D.C. Docket Nos. 1:11-cv-21797-JLK
1:09-cr-20444-JLK-1

RANDY DEONARINESINGH,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 25, 2013)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Randy Deonarinesingh appeals the denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, in which he alleged that his appellate counsel had provided ineffective assistance by failing to challenge on direct appeal the application of the two-level enhancement in U.S.S.G. § 2B1.1(b)(10)(B) (providing for a two-level enhancement where the offense involved "the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature").[1]  Deonarinesingh pled guilty to bank fraud and conspiracy.[2]  In his § 2255 motion, Deonarinesingh contended that appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the enhancement did not apply given that his underlying criminal convictions exclusively involved the passing of fraudulent or counterfeit checks, which were not access devices within the meaning of the Sentencing Guidelines. The magistrate judge determined that Deonarinesingh's appellate counsel had provided deficient performance by failing to raise the enhancement on direct appeal, but that Deonarinesingh was not prejudiced by this deficient performance because there was no indication in the record that Deonarinesingh would have

---

[1]  In the current version of the Sentencing Guidelines, this provision is located at U.S.S.G. § 2B1.1(b)(11).

[2]  Deonarinesingh pled guilty to one count of conspiracy, in violation of 18 U.S.C. § 371, to commit bank fraud, in violation of 18 U.S.C. § 1344; to make utter, and possess counterfeited securities, in violation of 18 U.S.C. § 513(a); and to transfer an implement designed for making a counterfeit security, in violation of 18 U.S.C. § 513(b).  He also pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344.

2

received a sentence other than the ninety-seven-month sentence that was imposed. The district court adopted the magistrate's report and recommendation over Deonarinesingh's objections and denied the § 2255 motion.

After denial of the § 2255 motion, Deonarinesingh sought a certificate of appealability (COA), which the district court denied.  On appeal, we granted a COA to address only the following issue: Whether Deonarinesingh's appellate counsel provided ineffective assistance by failing to raise on direct appeal a claim that the district court erred in applying a two-level increase to Deonarinesingh's offense level pursuant to U.S.S.G. § 2B1.1(b)(10)(B).

Deonarinesingh argues that the district court erred by concluding that he was not prejudiced by appellate counsel's deficient performance.  Deonarinesingh argues that there is a reasonable probability that, on direct appeal, we would have remanded his case for resentencing.  In its response, the government concedes both that Deonarinesingh's appellate counsel performed deficiently by failing to challenge the § 2B1.1(b)(10)(B) enhancement on direct appeal and that Deonarinesingh was prejudiced by appellate counsel's deficient performance.

In a § 2255 proceeding, we review a district court's legal conclusions de novo and factual findings for clear error.  *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008) (per curiam).  Because both prongs of the test enumerated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), present

3

mixed questions of law and fact, we review both prongs de novo. *Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013).

To make a successful claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The petitioner bears the burden of proof on both prongs of the *Strickland* test. *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001). Courts need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. *Strickland*'s two-part test also governs claims of ineffective assistance of appellate counsel. *Clark v. Crosby*, 335 F.3d 1303, 1310 (11th Cir. 2003).

## I.

Under the second prong of the *Strickland* test, the defendant must establish prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The defendant must affirmatively prove prejudice because attorney errors "are as likely to be utterly harmless . . . as they are to be prejudicial." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (internal quotation marks omitted).

4

**A.**

Relevant to determining the probability that the result of the proceeding would have been different but for counsel's errors is whether the objection to the enhancement was preserved for appellate review. *See Dell*, 710 F.3d at 1274 (stating that, on § 2255 motion collateral review, we judged whether the defendant had a reasonable probability of success on direct appeal, keeping in mind that a plain error standard would have applied to the claim on direct appeal). If it was preserved, on direct appeal "[w]e [would have] review[ed] de novo [the] district court's application of the Guidelines to the established facts." *United States v. Bradley*, 644 F.3d 1213, 1283 (11th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2375 (2012). If it was not, we would have reviewed for plain error. Fed. R. Crim. P. 52(b); *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 1648 (2012). Thus, if the objection had been preserved for review, it is more likely that "but for counsel's unprofessional errors, the result of the proceeding would have been different;" that is, it is more likely that we would have vacated Deonarinesingh's sentence on direct appeal under a de novo standard than a plain error standard. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

The unique circumstances of this case make it unclear whether a de novo or a plain error standard would have applied on direct review. Deonarinesingh did not object to the § 2B1.1(b)(10)(B) enhancement; rather, the government noted that

5

the enhancement was improper. Deonarinesingh's counsel never adopted the government's objection to the enhancement, but Deonarinesingh did file a pro se letter adopting the government's objection. The United States Probation Office responded to both the government's and the pro se objection, and the district court addressed the issue directly in rejecting Deonarinesingh's contention.

The contemporaneous objection rule does not exist for its own sake but "to protect judicial resources, in particular by ensuring that the trial courts will have an opportunity to avoid errors that might otherwise necessitate time-consuming retrial" and "to prevent counsel from sandbagging the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal." *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007) (internal quotation marks omitted). Moreover, the objection must be specific and of the same kind raised on appeal so that the district court has an opportunity to address the precise issue. *United States v. Gallo-Chamorro*, 48 F.3d 502, 507–08 (11th Cir. 1995).

Here, the objectives of the contemporaneous objection rule have been met. The government's objection, specific to the sentencing enhancement, combined with Deonarinesingh's pro se letter and the United States Probation Office's argument, allowed the district court to consider the propriety of the enhancement, giving it the opportunity to avoid error at sentencing. Importantly, the district

court recognized and addressed the argument against enhancement, so that it had the opportunity to avoid error.  Moreover, although counsel did not voice any objection to the enhancement, Deonarinesingh adopted the government's objection, so it can hardly be argued that there was any attempt by Deonarinesingh at "sandbagging."  *See Turner*, 474 F.3d at 1276.  Therefore, because the objectives of the contemporaneous objection rule were met, the objection was preserved for direct review, and it would have been subject to de novo review had appellate counsel raised the argument.  *Cf. United States v. Hawkins*, 905 F.2d 1489, 1493 n.1 (11th Cir. 1990) (applying "normal appellate review" to claims of both co-defendants despite the fact that counsel for only one of the defendants objected).

## B.

Because there is a "reasonable probability" that we would have vacated Deonarinesingh's sentence on direct review under a de novo standard, Deonarinesingh has established prejudice.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  A defendant receives a two-level increase to his offense level if the offense involved the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature.  U.S.S.G. § 2B1.1(b)(10)(B).  The Commentary to the Guidelines provides that the terms "unauthorized access device" and "counterfeit access device" both have the

7

meaning established in 18 U.S.C. § 1029(e).  U.S.S.G. § 2B1.1, cmt. n.9(A).

"[U]nauthorized access device" is defined as "any access device that is lost, stolen,

expired, revoked, canceled, or obtained with intent to defraud."  18 U.S.C.

§ 1029(e)(3).  A "counterfeit access device" is "any access device that is

counterfeit, fictitious, altered, or forged, or an identifiable component of an access

device or a counterfeit access device."  *Id*. § 1029(e)(2).  The statute defines an

"access device" as:

> any card, plate, code, account number, electronic serial number,
> mobile identification number, personal identification number, or other
> telecommunications service, equipment, or instrument identifier, or
> other means of account access that can be used, alone or in
> conjunction with another access device, to obtain money, goods,
> services, or any other thing of value, or that can be used to initiate a
> transfer of funds (*other than a transfer originated solely by paper
> instrument*).

*Id*. § 1029(e)(1) (emphasis added).

We have not considered whether a fraudulent check constitutes an access

device, as defined by § 1029(e) or under § 2B1.1(b)(10)(B).  However, in a case

challenging the sufficiency of the indictment, we cited legislative history that

stated that § 1029(e)'s definition of "access device" was "broad enough to

encompass future technological changes and *the only limitation* . . . excludes

activities such as passing forged checks."  *United States v. Dabbs*, 134 F.3d 1071,

1081 (11th Cir. 1998) (alteration in original) (internal quotation marks omitted).

Moreover, § 1029(e)(1)  expressly states that it excludes any "transfer originated

8

solely by paper instrument." Legislative history and the unanimous determination of those of our sister circuits to have considered the issue that "access device" as defined in § 1029(e) does not include fraudulent checks would have lent appellate counsel further support for the argument that the district court incorrectly calculated the applicable Sentencing Guidelines. *See* S. Rep. No. 98-368, at 10 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3647, 3656 (stating that the definition of "access devices" under § 1029(e) "does not cover activities such as passing bad checks); H.R. Rep. No. 98-894, at 19 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3689, 3705 (stating that the definition of "access devices" under § 1029(e) "excludes activities such as passing forged checks); *United States v. Butler*, 646 F.3d 1038, 1041 (8th Cir. 2011) ("Thus, U.S.S.G. § 2B1.1(b)(10) cannot be applied to . . . a scheme limited to fraudulent check-cashing."); *United States v. Tatum*, 518 F.3d 769, 770–72 (10th Cir. 2008) (holding that neither checks themselves nor the account numbers printed on them qualified as "access devices" for § 2B1.1(b)(10)(B) purposes); *United States v. Hughey*, 147 F.3d 423, 434 (5th Cir. 1998) (holding that, for 1029(e) purposes only, the statute "unambiguously places the passing of bad checks . . . outside [its] scope").

In cases on direct appeal, "[a]n error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless." *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). The

9

guideline error is harmless if the district court unambiguously expressed that it would have imposed the same sentence, even without the erroneous calculation. *Id*. at 1248. If the error is harmless, we need only inquire whether the sentence is reasonable. *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). For example, in *United States v. Dean*, 517 F.3d 1224, 1232 (11th Cir. 2008), we noted that, "[a]t sentencing, the district court judge also stated that he still would have imposed [the same imprisonment term] as a reasonable sentence, regardless of any guidelines miscalculation, because of the facts of the case and defendant's misleading and shifting testimony offered in an effort to hide the truth." In *Keene*, the district court stated that "even if the guideline calculations are wrong, my application of the sentencing factors under Section 3553(a) would still compel the conclusion that a 10-year sentence . . . is reasonable and appropriate under all the factors that I considered." 470 F.3d at 1349.

In contrast, where the district court has emphasized that the guideline range influenced the sentence, we have held that a calculation error was not harmless. *See United States v. Paley*, 442 F.3d 1273, 1278–79 (11th Cir. 2006) (per curiam). In *Paley*, our conclusion regarding the harmlessness of the sentencing error was based largely on the district court's statement that it had been "a difficult sentencing" and that it had been "greatly influenced by the Advisory Guidelines." *See id.* We found that the erroneous calculation was not harmless in spite of the

fact that the district court emphasized that a sentence of 18 months' imprisonment "adequately reflect[ed] the seriousness of the offense and provide[d] just and reasonable punishment." *Id.* at 1278.

Here, then, the district court's reliance on *Keene* on collateral review is misplaced. During sentencing, the district court repeatedly stated that it relied on the guidelines range and the government's "earlier announced position that they would not be recommending more than the low end of the guideline range." The district court mentioned the precise length of the sentence it would eventually impose only as an explanatory aside to its declaration "that the government . . . recommends the low end." Although the court stated that "it ha[d] the authority to sentence anywhere within the range or without the range," such a statement does not negate the court's reliance on the guidelines. Even though the court noted its *authority* to disregard the guidelines in reaching a sentence, it also emphasized that the guidelines would be "highly suggestive of the appropriate and proper sentence that should be imposed." Under these circumstances, it is clear that the erroneous calculation "affect[ed] the district court's selection of the sentence imposed." *Paley*, 442 F.3d at 1278 (internal quotation marks omitted). The erroneous calculation here is therefore not harmless.[3]

---

[3] We note that the burden of proving that an erroneous Sentencing Guidelines calculation is harmless is on the government. *See Paley*, 442 F.3d at 1278. Not only does the government not contest Deonarinesingh's appeal of the district court's denial of his § 2255

Accordingly, because we would have found that (1) the district court erred in calculating the guidelines, and (2) the error was not harmless, Deonarinesingh has established prejudice.  *See id.* at 1278–79.

## II.

Because Deonarinesingh has established prejudice, we must now examine whether counsel's performance was unreasonable—that is, whether "particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance."  *Chandler v. United States*, 218 F.3d 1305, 1313–14 (11th Cir. 2000) (en banc) (internal quotation marks omitted).  The defendant bears the burden to prove by a preponderance of the evidence that counsel's performance was unreasonable.  *Id.*  Our review of counsel's performance is highly deferential, and we apply a "strong presumption" that counsel's performance was reasonable and that all significant decisions were made in the exercise of reasonable professional judgment.  *Id.* at 1314 (internal quotation marks omitted).  We conduct an objective inquiry into the reasonableness of counsel's performance, such that "a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Id.* at 1315.  We evaluate counsel's effectiveness based on counsel's perspective at the time.  *Id.* at 1316 (internal quotation marks omitted).

---

motion or the issue of harmless error, it has affirmatively argued that the error was not harmless.

12

Appellate counsel is not required to raise all nonfrivolous issues on appeal, and, as a result, it is difficult for a defendant to show that his counsel was ineffective for failing to raise certain issues on appeal, especially where counsel raised other strong issues. *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam); *see also Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765 (2000) (stating that "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (internal quotation marks omitted)). Appellate counsel does not render deficient performance by failing to raise an issue on appeal if the legal principle is unsettled. *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004). However, counsel's ignorance of a well-defined legal principle could be inexcusable and demonstrate ineffective performance. *Id.* Further, we have held that "the mere absence of authority does not automatically insulate counsel's failure" to raise the issue. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1304 (11th Cir. 2000) (concerning counsel's failure to object at trial). Rather, the fact that other circuits have addressed the issue on the merits may indicate that a challenge "on such grounds [is] not wholly without precedent." *Id.*

Here, Deonarinesingh argues, and the government concedes, that Deonarinesingh's appellate counsel performed deficiently. The district court likewise found that appellate counsel was deficient. We agree.

Deonarinesingh does not argue the strength of the ignored § 2B1.1(b)(10)(B) claim relative to that of the claims actually raised.  Nevertheless, the government argues, and we agree, that the § 2B1.1(b)(10)(B) claim was "clearly stronger than" the claims actually raised on direct appeal: number of victims enhancement, aggravating role enhancement, sophisticated means enhancement, and substantive reasonableness.

Under the number of victims enhancement claim, Deonarinesingh previously asked this court to adopt the rule, established by the Sixth Circuit in *United States v. Yagar*, 404 F.3d 967, 971 (6th Cir. 2005), that reimbursed victims of bank fraud are not victims for purposes of U.S.S.G. § 2B1.1(b)(2)(B).  However, our decision in *United States v. Lee*, 427 F.3d 881, 895 (11th Cir. 2005) foreclosed this argument by expressly refusing to apply the *Yagar* rule.

On direct appeal, we reviewed the decisions of the district court regarding the aggravating role and sophisticated means enhancements under a clear error standard.  *United States v. Deonarinesingh*, 411 F. App'x 245, 247 (11th Cir. 2011) (per curiam).  We will not find clear error "unless, in view of the entire record, we are left with a definite and firm conviction that a mistake has been committed."  *Glassroth v. Moore*, 335 F.3d 1282, 1291 (11th Cir. 2003) (internal quotation marks omitted).  Under clear error review, this court cannot reverse the district court where it "has chosen one of two plausible views of the evidence." *Id.*

14

Thus, because there was substantial evidence to support the enhancements, Deonarinesingh faced a small likelihood of success on these claims.

Deonarinesingh's substantive reasonableness claim likewise faced a substantial hurdle on direct appeal. We reviewed the sentence for substantive reasonableness under an abuse of discretion standard. *Deonarinesingh*, 411 F. App'x at 249. The party challenging the sentence on appeal bears the burden of showing unreasonableness. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). We ordinarily expect a within-the-guidelines sentence to be reasonable. *Id.* With such an exacting standard on review, any defendant challenging a sentence at the low end of the guidelines range is unlikely to be successful. *See United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (stating that we had found only four out of "hundreds of sentences . . . to be substantively unreasonable"). In particular, Deonarinesingh's sole argument supporting the substantive unreasonableness claim—that his co-defendants received lower sentences—did not articulate a cognizable challenge to the reasonableness of his sentence. *Deonarinesingh*, 411 F. App'x at 249 (explaining that "disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal" (internal quotation marks omitted)).

On the contrary, a § 2B1.1(b)(10)(B) claim would have carried a substantial likelihood of success on direct appeal. Although we have determined that such a

15

claim would have faced de novo review, we nonetheless examine its merit under a plain error standard.[4]  To obtain reversal under plain error review, "(1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights."  *United States v. Bonilla*, 579 F.3d 1233, 1238 (11th Cir. 2009) (internal quotation marks omitted).  The error must also "seriously affect the fairness, integrity or public reputation of judicial proceedings."  *Id.* at 1239 (internal quotation marks and alteration omitted).

As stated, the district court committed error by applying the § 2B1.1(b)(10)(B) enhancement at Deonarinesingh's sentencing.  In addition, that error was plain because the plain language of the statute "unambiguously places the passing of bad checks and similar conduct outside the scope of the federal statute."  *Tatum*, 518 F.3d at 771 (internal quotation marks omitted).  The error also affected Deonarinesingh's substantial rights as well as "the fairness, integrity or public reputation of judicial proceedings."  *Bonilla*, 579 F.3d at 1239 (internal quotation marks omitted); *see United States v. Antonietti*, 86 F.3d 206, 209 (11th

---

4    The record does not make clear the precise reason why appellate counsel decided not to raise the § 2B1.1(b)(10)(B) claim.  It appears that he believed such a claim to be "frivolous," though the record does not expound on whether uncertainty about the applicable standard of review impacted the decision.  In order to follow the maxim "that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time," *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2065), we will examine the likelihood of success on a § 2B1.1(b)(10)(B) claim under a plain error standard in order to determine whether that claim was "clearly stronger than those presented."  *Robbins*, 528 U.S. at 288, 120 S. Ct. at 765 (internal quotation marks omitted).

16

Cir. 1996) (finding that an incorrect calculation of a guidelines range constituted plain error).

In sum, the § 2B1.1(b)(10)(B) claim was "clearly stronger" than the claims appellate counsel raised on direct appeal, and appellate counsel was thus deficient in failing to raise the claim. Deonarinesingh has therefore established the first *Strickland* prong.

## C.

Upon review of the record and after consideration of the parties' appellate briefs, we hold that the district court erred by determining that appellate counsel's deficient performance did not prejudice Deonarinesingh. Accordingly, Deonarinesingh's appellate counsel provided ineffective assistance under *Strickland* by failing to appeal the application of the § 2B1.1(b)(10)(B) enhancement. Therefore, we reverse the district court's decision denying Deonarinesingh's § 2255 motion, vacate Deonarinesingh's sentence, and remand for resentencing consistent with this opinion.

**REVERSED, VACATED, AND REMANDED.**